Anthony Pearsall appeals from the dismissal of his petition for writ of habeas corpus. His petition shows that he is a prison inmate; that he was charged in a prison disciplinary proceeding with being "fired" from a work release job, in violation of a prison regulation; that a hearing was held before a prison disciplinary board; that the board found him guilty as charged; and that he was ordered, inter alia, to forfeit "all" of his "good time," be removed from the work release program, and be "reclassified." He avers, inter alia, in his petition that the disciplinary proceeding failed to comport with due process requirements in that, he says, the board's finding of guilt was based solely on hearsay testimony and he was denied the right to present a witness in his behalf.
The state filed a motion to dismiss the petition, categorically denying its averments and averring generally that "the Petitioner was afforded the full range of due process rights." The trial court summarily granted the state's motion to dismiss and taxed the court costs against appellant. Pearsall appeals and has filed a pro se brief addressing the issues involved. Since the state has not questioned whether administrative appeals have been exhausted, we will assume for the purpose of this opinion that they have been; however, the record does not reflect that to be the case.
In any prison disciplinary case, the initial inquiry is whether the deprivation suffered amounted to the denial of a liberty interest protected by the due process clause of the Constitution. Heidelburg v. State, 522 So.2d 337 (Ala.Cr.App. 1988); Summerford v. State, 466 So.2d 182 (Ala.Cr.App. 1985). The taking of good time from a prison inmate constitutes a denial of a liberty interest, and triggers the due process requirements of Wolff v. McDonnell, 418 U.S. 539,94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Ex parte Floyd, 457 So.2d 961
(Ala. 1984); Summerford v. State.
A prisoner may not be stripped of good time credits without some modicum of due process accorded him at his disciplinary hearing. Wolff v. McDonnell; Owens v. State, 507 So.2d 576
(Ala.Cr.App. 1987).
 I.
Appellant first contends that the disciplinary board's action did not comport with due process and, therefore, was arbitrary and capricious because, he says, its finding of guilt rested entirely on hearsay. The record clearly shows that the board's decision was solely based upon the hearsay testimony of the arresting officer. The board states its reasons in the record for its finding of guilt, as follows: "Based on the statement from the arresting officer that the foreman from Coastal Lumber called and stated that they had fired Inmate Pearsall, the Board found him guilty." Indeed, it appears that the testimony of the arresting officer was the only evidence before the board when it made its decision.
Due process requires that a state disciplinary board's decision not be made arbitrarily or capriciously, but be based upon some evidence. Superintendent, Massachusetts CorrectionalInstitution, Walpole v. Hill, 472 U.S. 445, 105 S.Ct. 2768,86 L.Ed.2d 356 (1985); Heidelburg v. State; Thompson v. State,504 So.2d 747 (Ala.Cr.App. 1987).
We find the following discussion of the admissibility of evidence in prison disciplinary hearings instructive:
 "A disciplinary hearing is neither a civil nor a criminal proceeding. As a consequence, the formal rules of evidence observed in criminal and civil trials do no apply. . . . The end result appears to be that disciplinary hearings are sui generis, governed by neither the evidentiary rules of a civil trial, a criminal trial, nor an administrative hearing. The only limitations appear to be those imposed by due process, statute, or administrative regulations.
 "The admissibility of hearsay evidence at prison disciplinary hearings is impliedly authorized by the Supreme Court's discussion of confrontation and cross-examination in Wolff v. McDonnell. Since neither right must be afforded an inmate, it follows that hearsay may not be *Page 1016 
objected to on these grounds. Accordingly, hearsay testimony has been held admissible in disciplinary hearings."
J. Cobert and N. Cohen, Rights of Prisoners § 8.07 (1981) (footnotes omitted). We have held that, while hearsay testimony may be admissible in prison disciplinary hearings, it may not be sufficient by itself in all cases to support a finding of guilt. See Ex parte Floyd; Owens v. State.
The question to be answered here is whether the hearsay testimony of the officer, taking into consideration all the circumstances, is sufficient to meet the test of being "some" evidence which would satisfy the requirements of due process.
Although prison disciplinary hearings are sui generis, we find the general law pertaining to admissibility of hearsay evidence in administrative hearings informative:
 "[I]t is generally held that an administrative agency may receive evidence which would be considered incompetent in judicial proceedings including hearsay, at least where it is corroborated or bears satisfactory indicia of reliability. Nevertheless, the rule is subject to qualification where the receipt of such evidence would result in a denial of substantial justice. In other words, it has been stated that it is not the hearsay nature per se of proffered evidence that is significant in determining whether such evidence is admissible in the administrative context; it is its probative value, reliability, and fairness of its use that are determinative."
73A C.J.S., Public Administrative Law and Procedure § 129 (1983) (footnotes omitted).
In the case sub judice appellant pleaded not guilty and apparently insisted upon his innocence throughout the proceeding. From the written questions directed to the arresting officer submitted by appellant to the board, it can be reasonably inferred that appellant may not have been physically able to perform the work. Were there extenuating circumstances here which could lead to different conclusions as to the reason for appellant's termination? It is difficult to accept the bare hearsay statement that the foreman called and said that appellant had been "fired," as being sufficient evidence to justify a finding of guilt and taking of good time from appellant. The taking of good time is a serious matter. The record does not show how much good time was taken, other than "all of it." Regardless of the amount, every day taken extends appellant's time in the penitentiary. What did the foreman mean when he said that they had "fired" appellant? What did occur? Did the term "fired" fairly depict what happened? We do not know. No one came forward with direct evidence. We must rely on hearsay; a statement made by a third party over the telephone. We can only speculate as to what happened. The evidence relied upon is not corroborated in any manner. There is nothing to indicate its reliability. We question its probative value under these circumstances and the fairness of its use in this case. No reason has been advanced as to why the disciplinary board could not have brought someone before it from the company with direct knowledge of the incident. We question the use of hearsay evidence here to support the board's findings when direct testimony as to the facts was obtainable. See Sapp v. Le Fevre, 111 A.D.2d 483, 488 N.Y.S.2d 857
(1985); Outagamie County v. Town of Brooklyn,18 Wis.2d 303, 118 N.W.2d 201 (1962). For these reasons, we find that the finding of guilt by the disciplinary board is not supported by sufficient evidence to meet due process requirements and is, therefore, arbitrary and capricious.
We do not hold that a finding of guilt in a disciplinary proceeding can never be based entirely on hearsay. Situations arise when this is proper and necessary; however, in those cases certain measures must be taken to insure minimum due process. See, e.g., Kyle v. Hanberry, 677 F.2d 1386 (11th Cir. 1982); Murphy v. Superintendent, Massachusetts CorrectionalInstitution, Cedar Junction, 396 Mass. 830, 489 N.E.2d 661
(1986); Harris v. Coughlin, 116 A.D.2d 896, 498 N.Y.S.2d 276
(1986), appeal denied, 67 N.Y.2d 1047, 504 N.Y.S.2d 91,495 N.E.2d 355 (1986). However, the instant *Page 1017 
case does not involve one of those situations.
 II.
Appellant contends that the disciplinary board failed to honor his request to require the presence of a witness at the hearing. The record shows that he requested the presence of Alfred Smith to be a witness in his behalf. The record also shows, "Witness: Not Available." In any case, Smith did not appear, and appellant alleges in his petition that the board did not contact Smith and made no effort to do so. In Ponte v.Real, 471 U.S. 491, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985), the Supreme Court elaborated on its Wolff v. McDonnell position regarding the necessity for a statement of reasons for not calling a witness requested by an inmate at a disciplinary hearing. The Court held that a statement of reasons in the record was constitutionally required. Was the reason given here sufficient? We do not think so. In our opinion, more than just a terse "not available" is required. Specific reasons must be given, explaining the witness's nonavailability.
For the reasons set out in part I above, we conclude that appellant's petition for writ of habeas corpus is meritorious and should have been granted. The judgment of the trial court dismissing the habeas corpus petition is, therefore, reversed, and this case is remanded with directions that appropriate orders be entered by the trial court to cause the issuance of a writ of habeas corpus, directed to the state, ordering it to expunge all reference to this proceeding from appellant's files and to restore any good time taken from him as a result thereof. Due return of the action taken should be made to this court.
REVERSED AND REMANDED WITH DIRECTIONS.
All Judges concur.